[No. B183467. Second Dist., Div. Three. June 2, 2006.]

GABRIELA GONZALEZ, Plaintiff and Appellant, v.
EMELIKE I. KALU, Defendant and Respondent.

24

24

---

**COUNSEL**

The Younger Law Firm and Robert J. Younger for Plaintiff and Appellant.

Blumberg Law Corporation and Ave Buchwald for Defendant and Respondent.

---

**OPINION**

**CROSKEY, J.**—Gabriela Gonzalez appeals a summary judgment in a legal malpractice action based on the statute of limitations, Code of Civil Procedure section 340.6. After filing an administrative complaint against her employer with the Department of Fair Employment and Housing (DFEH) and telling Gonzalez that the case would take a very long time and that he would call her or send her a letter, Emelike I. Kalu had no contact with Gonzalez for almost

three years. Gonzalez contends the limitations period was tolled or did not commence during the time Kalu failed to communicate with her. We conclude that there are triable issues of fact as to whether Kalu continued to represent Gonzalez during that time, which would toll the limitations period, and whether such "continuing representation" was for a period sufficient to make her action timely. We therefore will reverse the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Gonzalez worked for a building maintenance company as a cleaner in a food court. She hired Kalu on June 2, 2000, to represent her in a claim against her employer in connection with allegations of sexual harassment by a fellow employee. Kalu sent a letter to the employer on June 6, 2000, stating that the employer was legally responsible for the alleged harassment. The letter demanded a settlement and stated that if the employer failed to settle the matter, Gonzalez would file claims with the appropriate federal and state administrative agencies and proceed to litigation. The letter warned the employer not to retaliate by terminating Gonzalez's employment. By the end of the month, Gonzalez told Kalu that she had been fired.

Kalu filed an administrative complaint with the DFEH on July 31, 2000, alleging sexual harassment only.[1] He sent a letter to Gonzalez's former employer that same day stating that her discharge was an act of retaliation, that he had requested a right-to-sue letter, and that upon receipt of a right-to-sue letter he would sue the employer for sexual harassment and wrongful termination. According to Gonzalez, Kalu or someone in his office told her that same day "that the case was going to take very long, and they were going to call me or send me a letter."

Gonzalez maintains that she did not hear from Kalu and did not attempt to contact him from July 31, 2000, until June 2003, when she visited his office to pick up her file for purposes of separate litigation against her former employer and first learned that Kalu was not prosecuting her case.[2] She maintains that Kalu never informed her before June 2003 that he would not prosecute the matter further. According to Kalu, he orally informed Gonzalez at some time that he would not file a lawsuit on her behalf. Kalu maintains

---

[1] The appellate record does not disclose whether the DFEH issued a right-to-sue letter.

[2] Gonzalez filed in opposition to the summary judgment motion a declaration that was not signed under the penalty of perjury as required by Code of Civil Procedure section 2015.5. The declaration is not "admissible evidence" as required to support a summary judgment motion (Code Civ. Proc., § 437c, subd. (d)), so we have not considered it and rely instead on her deposition testimony and other admissible evidence.

that Gonzalez agreed to drop the case if no settlement was forthcoming and that his last conversation with her before she picked up the file in June 2003 was in December 2000. Although Kalu's usual practice was to advise a client in writing upon his withdrawal from representation, there is no evidence of such a writing in this case.

### 2. *Trial Court Proceedings*

Gonzalez filed a complaint against Kalu in the superior court on January 23, 2004. She alleges in the complaint that she retained Kalu to represent her in an action for sexual harassment, that Kalu failed to adequately investigate and prosecute the case, and that he failed to commence a civil action within the one-year limitations period. She alleges counts for legal malpractice, breach of fiduciary duty, and breach of contract.

Kalu moved for summary judgment based on Code of Civil Procedure section 340.6 in December 2004. The sole ground for the motion was that Gonzalez in the exercise of reasonable diligence should have discovered more than one year before she filed her complaint that Kalu had failed to timely file a complaint for sexual harassment in the superior court. Kalu argued that his failure to communicate with Gonzalez after July 31, 2000, despite his purported promise to call her or send her a letter, should have alerted Gonzalez that he had not prosecuted her case and should have caused her to discover before January 23, 2003, that he had not commenced a civil action.

Gonzalez argued in opposition that reasonable minds could differ as to when she reasonably should have discovered Kalu's failure to file a complaint in the superior court. She also argued that in light of Kalu's statement on July 31, 2000, that the case would take "very long" and that he would call her or send her a letter, and his failure to inform her that he was withdrawing from representation and would not commence a civil action, he continued to represent her for purposes of tolling the limitations period under Code of Civil Procedure section 340.6, subdivision (a)(2).

The court granted the motion. The order granting the motion stated in pertinent part, "plaintiff contends that she had retained defendant Emelike I. Kalu, an attorney, to file a complaint against her employer; that he had failed to do so within the applicable one-year period; and that her last contact with defendant Emelike I. Kalu was in July 2000 when she was told that she would be receiving a call or letter from him[.] . . . [R]easonable persons cannot differ: the one-year period in which plaintiff could have filed suit against defendant Emelike I. Kalu had expired by the time plaintiff commenced this action on January 23, 2004."

Gonzalez moved for a new trial arguing that the limitations period was tolled during the time she reasonably believed that Kalu continued to

represent her, and that her failure to discover before June 2003 that Kalu had not commenced a civil action was reasonable. The court denied the motion stating, "it is unreasonable that after almost three years of noncommunication, the plaintiff would believe that her case was still being pursued despite a total lack of communication from the defendant," and stating that Gonzalez could have simply called Kalu's office to inquire whether her case was still active.

## CONTENTIONS

Gonzalez contends her complaint was timely because (1) the limitations period was tolled during the time she reasonably believed that Kalu continued to represent her; and (2) her failure to discover before June 2003 that Kalu had not commenced a civil action was reasonable.

## DISCUSSION

### 1. *Standard of Review*

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (*Ibid.*) We review the trial court's ruling de novo, liberally construing the evidence in favor of the opposing party and resolving all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].)

### 2. *Code of Civil Procedure Section 340.6 and Continuous Representation*

Code of Civil Procedure section 340.6 states that an action against an attorney for professional malpractice, other than actual fraud, must be commenced within one year after the plaintiff actually discovered or reasonably should have discovered the facts constituting the wrongful act or omission, or within four years after the wrongful act or omission, whichever is earlier. (*Id.*, subd. (a).) The limitations period is tolled, however, if any of the statutory bases for tolling applies.[3] (*Ibid.*)

---

[3] "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the

The limitations period is tolled while the attorney continues to represent the plaintiff regarding the same specific subject matter. (Code Civ. Proc., § 340.6, subd. (a)(2).) The period is tolled even if the client is aware of the attorney's negligence. (*O'Neill v. Tichy* (1993) 19 Cal.App.4th 114, 120–121 [25 Cal.Rptr.2d 162]; *Gurkewitz v. Haberman* (1982) 137 Cal.App.3d 328, 336 [187 Cal.Rptr. 14].) Quoting the legislative history, the California Supreme Court in *Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691] stated that the purposes of tolling based on continuous representation are "to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' " The latter purpose reflects the understanding that a client who relies on an attorney ordinarily is not able to evaluate the attorney's professional services and should be entitled to rely on the attorney's competence and good faith while the representation continues. (*O'Neill, supra,* at p. 120; see *Greene v. Greene* (1982) 56 N.Y.2d 86 [436 N.E.2d 496, 451 N.Y.S.2d 46, 50].[4])

■ Code of Civil Procedure section 340.6 does not expressly state a standard to determine when an attorney's representation of a client regarding a specific subject matter continues or when the representation ends, and the legislative history does not explicitly address this question. An attorney's representation of a client ordinarily ends when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or upon completion of the tasks for which the client retained the attorney. (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 887–888 [110 Cal.Rptr.2d 877]; *Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1497 [35 Cal.Rptr.2d 169]; 3 Mallen & Smith, Legal Malpractice (2006 ed.) Statutes of Limitations, § 22.13, p. 385.) Some authorities state that the representation also ends if the attorney withdraws unilaterally without the consent of either the client or a court, despite any breach of duty, if the client actually has or reasonably should

facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." (Code Civ. Proc., § 340.6, subd. (a).)

[4] "In a broader sense the rule recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." (*Greene v. Greene, supra,* 451 N.Y.S.2d at p. 50.)

have no expectation of further services. (1 Mallen & Smith, Legal Malpractice, *supra*, Theory of Liability—Common Law, § 8.2, p. 948;[5] *Shumsky v. Eisenstein* (2001) 96 N.Y.2d 164 [750 N.E.2d 67, 726 N.Y.S.2d 365, 370–371].[6]) In *Shumsky*, clients retained an attorney in April 1993 to commence a breach of contract action, the attorney failed to contact the clients thereafter, the limitations period on the breach of contract action expired in March 1994, and the clients attempted to contact the attorney by phone in October 1996. (*Shumsky*, *supra*, 726 N.Y.S.2d at pp. 366–367, 370.) Reversing a summary judgment in favor of the attorney, the New York Court of Appeals in *Shumsky* concluded that the clients reasonably believed that the attorney would commence a civil action on their behalf, that the earliest they reasonably should have known of the attorney's abandonment was after he failed to respond to their inquiries in October 1996, and that measured from that date the malpractice complaint was timely. (*Id.* at pp. 370–371.)

Some California courts have endorsed the purported "New York rule" that for purposes of the continuing representation rule, an attorney-client relationship exists only as long as " 'there are clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney' " and the relationship " 'is marked with trust and confidence.' "[7] (*Shapero v. Fliegel* (1987) 191 Cal.App.3d 842, 848 [236 Cal.Rptr. 696] quoting *Muller v. Sturman* (1981) 79 A.D.2d 482 [437 N.Y.S.2d 205, 208]; accord, *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165, 1171–1172 [16 Cal.Rptr.2d 837].) Other California courts have rejected that purported rule because those requirements are not stated in Code of Civil Procedure section 340.6. (*Worthington v. Rusconi*, *supra*, 29 Cal.App.4th at pp. 1497–1498; *O'Neill v. Tichy*, *supra*, 19 Cal.App.4th at p. 120.) We agree with *Worthington* and *O'Neill* that section 340.6, subdivision (a)(2) neither states nor implies that an attorney's representation of a client continues only as long as those conditions are present.

Some California courts have stated, "Continuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence

---

[5] "The relationship may be ended unilaterally if the lawyer's communication is such that the client understood or reasonably should have understood that no further services would be rendered. Although such a termination may be wrongful, it does objectively end the client's expectation for further legal services." (1 Mallen & Smith, Legal Malpractice, *supra*, Theory of Liability—Common Law, § 8.2, p. 948.)

[6] "Of course, even when further representation concerning the specific matter in which the attorney allegedly committed the complained of malpractice is needed and contemplated by the client, the continuous representation toll would nonetheless end once the client is informed or otherwise put on notice of the attorney's withdrawal from representation." (*Shumsky v. Eisenstein*, *supra*, 726 N.Y.S.2d at pp. 370–371.)

[7] The California courts' statement of the purported New York rule is inconsistent with our reading of *Shumsky v. Eisenstein*, *supra*, 726 N.Y.S.2d 365, an opinion by that state's highest court.

of an ongoing *mutual* relationship and of activities in furtherance of the relationship." (*Worthington v. Rusconi, supra,* 29 Cal.App.4th at p. 1498; accord, *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort, supra,* 91 Cal.App.4th at p. 887.) In both *Worthington* and *Lockley,* however, there were continuing contacts between the attorney and client regarding the specific subject matter of the representation. *Worthington* and *Lockley* held that those contacts established continuing representation and did not rule on the question whether an attorney's representation of a client can continue when there are no contacts. (*Worthington, supra,* at p. 1498; *Lockley, supra,* at pp. 889–891.)

Kalu contends the representation ended when the limitations period on the sexual harassment claim expired because the loss became irremediable at that time. He argues that when a loss is irremediable, an attorney cannot correct or minimize the alleged error, so tolling would not serve the purposes of the continuous representation rule. We do not construe Code of Civil Procedure section 340.6, subdivision (a)(2) so restrictively. Subdivision (a)(2) does not state that the limitations period is tolled only as long as the injury is remediable, but that the period is tolled during the time "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Although one of the purposes of the continuous representation rule is "to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error,' " another purpose is " 'to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' " (*Laird v. Blacker, supra,* 2 Cal.4th at p. 618.) The latter purpose would not be served if tolling ended when the client's loss arguably became irremediable and the attorney, by continuing to represent the client until the limitations period for a malpractice action had expired, could then exploit the client's reliance and escape malpractice liability.

█    Absent a statutory standard to determine when an attorney's representation of a client regarding a specific subject matter ends, and consistent with the purposes of the continuing representation rule, we conclude that for purposes of Code of Civil Procedure section 340.6, subdivision (a)(2), in the event of an attorney's unilateral withdrawal or abandonment of the client, the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services. (See 1 Mallen & Smith, Legal Malpractice, *supra,* Theory of Liability—Common Law, § 8.2, p. 948; *Shumsky v. Eisenstein, supra,* 726 N.Y.S.2d at pp. 370–371].) That may occur upon the attorney's express notification to the client that the attorney will perform no further services, or, if the attorney remains silent,

may be inferred from the circumstances.[8] Absent actual notice to the client that the attorney will perform no further legal services or circumstances that reasonably should cause the client to so conclude, a client should be entitled to rely on an attorney to perform the agreed services and should not be required to interrupt the attorney-client relationship by filing a malpractice complaint.[9] After a client has no reasonable expectation that the attorney will provide further legal services, however, the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, so the tolling should end. To this extent and for these reasons, we conclude that continuous representation should be viewed objectively from the client's perspective and reject the dicta in *Worthington v. Rusconi, supra,* 29 Cal.App.4th at page 1498, and *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort, supra,* 91 Cal.App.4th at page 887, to the contrary.

Thus, the rule that we have stated allows the client, consistent with the purposes of the continuing representation rule, to avoid the disruption of an attorney' client relationship that would result from the filing of a malpractice action, but only as long as the client actually and reasonably believes that the representation is continuing. Whether the client actually and reasonably believed that the attorney would provide further legal services regarding a specific subject matter is predominantly a question of fact for the trier of fact, but can be decided as a question of law if the undisputed facts can support only one conclusion. (Cf. *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751 [76 Cal.Rptr.2d 749, 958 P.2d 1062].)

### 3. *Whether Gonzalez Believed or Reasonably Should Have Believed More Than One Year Before Filing Suit That Kalu Had Withdrawn from Representation Is a Triable Issue of Fact*

Gonzalez hired Kalu on June 2, 2000, to represent her in connection with her allegations of sexual harassment. The retainer agreement signed by Gonzalez stated that she authorized Kalu to take all steps that he deemed

---

[8] To provide an express notification to the client that the representation has ended is not an onerous burden for an attorney.

[9] *Shapero v. Fliegel, supra,* 191 Cal.App.3d at pages 848–849, stated that an attorney's failure to formally withdraw as counsel in a dissolution action by filing and serving a notice of withdrawal, as provided by Code of Civil Procedure section 285.1, did not necessarily compel the conclusion that the representation was continuing: "We hold that such failure, standing alone, does not satisfy the continued representation provision of section 340.6 for the purpose of tolling the running of the statute of limitations." In our view, the failure to notify a client of the attorney's withdrawal from representation does not compel the conclusion that the representation continues ad infinitum, but is an important factor to consider in determining whether the client at a particular time reasonably believed that the representation was continuing.

necessary to prosecute the claim against her employer, including "to institute appropriate legal proceedings." Kalu sent a letter to the employer on June 6, 2000, demanding settlement and threatening to file administrative claims and proceed to litigation. Kalu filed an administrative complaint verified by Gonzalez with the DFEH on July 31, 2000, and sent another letter to the employer the same day stating that he had filed an administrative complaint and would file a lawsuit after receiving a right-to-sue letter. According to Gonzalez, Kalu or someone from his office told her on July 31, 2000, "that the case was going to take very long, and they were going to call me or send me a letter." Gonzalez testified in her deposition that Kalu never informed her that he was withdrawing from her representation and that she never told him not to proceed. She testified that she did not contact Kalu because she was waiting for him to contact her.

■ There is no evidence that Kalu informed Gonzalez, or that she knew, that the administrative complaint was likely to lead to the relatively prompt issuance of a right-to-sue letter as opposed to a lengthy period of administrative review, that a civil action under the Fair and Employment and Housing Act (Gov. Code, § 12900 et seq.) must be filed within one year after receiving a right-to-sue letter (Gov. Code, § 12965, subd. (b)), or that he provided any information concerning the timing of litigation apart from "that the case was going to take very long." Moreover, there is no evidence that Kalu explained to Gonzalez the significance of a civil action as distinguished from an administrative complaint or stated that he would contact her when he filed a lawsuit. Viewing the evidence in the light most favorable to Gonzalez as the party opposing summary judgment, we must assume that Kalu never informed Gonzalez that he would not continue to prosecute her case. The evidence presented supports the conclusion that Gonzalez reasonably believed that by filing an administrative complaint Kalu had commenced the prosecution of her claim, that he would continue to take all measures reasonably necessary to prosecute the claim, that the matter would not be resolved for a "very long" time, and that he would contact her at the appropriate time. Because reasonable minds could differ, in these circumstances we cannot conclude as a matter of law that the absence of communication for almost two years and six months (from July 31, 2000, until January 23, 2003, one year before Gonzalez filed her malpractice complaint) after filing an administrative complaint should have caused Gonzalez to believe that Kalu had withdrawn or abandoned her or should have caused her to inquire so as to learn before January 23, 2003, that he no longer represented her.

Viewing the evidence in the light most favorable to Gonzalez as the party opposing summary judgment, we conclude that reasonable minds could differ as to whether Gonzalez reasonably should have believed more than one year before filing suit that Kalu had withdrawn from representation or abandoned her. There are triable issues of fact as to whether the limitations period was

tolled based on continuing representation, and, if so, whether it was tolled for a period sufficient to make Gonzalez's action timely.

## *DISPOSITION*

The judgment is reversed. The matter is remanded for further proceedings consistent with the views expressed herein. Gonzalez is entitled to recover her costs on appeal.

Klein, P. J., and Kitching, J., concurred.