FILED

MAY 4 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



In re: HELLER EHRMAN LLP,

        Debtor,

_____

PARAVUE CORPORATION,

        Plaintiff-Appellant,

  v.

HELLER EHRMAN LLP,

        Defendant-Appellee.

No.   16-15385

D.C. No. 3:14-cv-03887-CRB
Northern District of California,
San Francisco

ORDER

Before: GOULD and WATFORD, Circuit Judges, and SANDS,* District Judge.

Appellee's Motion for Leave to File Reply is GRANTED.

The memorandum disposition in the above-captioned matter filed on March 5, 2018 is amended as follows:

At page 7, line 18, delete <with the email thread>, and replace with <before July 11, 2007>.

At page 8, line 2, insert a paragraph stating: <Paravue did not address the lower court's ruling as to Claim 1020 in its opening brief. Accordingly, we

---

     *     The Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia, sitting by designation.

conclude that Paravue waived Claim 1020 on appeal. *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1129-30 (9th Cir. 2012) ("Claims not made in an opening brief in a sufficient manner to put the opposing party on notice are deemed waived.") (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002)).>.

At page 8, line 8, delete <**REVERSED and REMANDED.**> and replace with <**AFFIRMED in part, REVERSED in part, and REMANDED.**>.

At page 8, line 9, add <The parties shall bear their own costs on appeal.>. The amended memorandum disposition is filed forthwith.

With those amendments made, the Appellee's Petition for Rehearing is DENIED.

The full court has been advised of Appellee's Petition for En Banc Rehearing and no judge of the court has requested a vote on the Petition for En Banc Rehearing. Fed. R. App. P. 35.

Appellee's Petition for En Banc Rehearing is also DENIED.

No future petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

MAY 4 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re:  HELLER EHRMAN LLP,<br><br>        Debtor,<br>_____<br><br>PARAVUE CORPORATION,<br><br>        Plaintiff-Appellant,<br><br>  v.<br><br>HELLER EHRMAN LLP,<br><br>        Defendant-Appellee. | No.    16-15385<br><br>D.C. No. 3:14-cv-03887-CRB<br><br> AMENDED<br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted September 14, 2017
San Francisco, California

Before:  GOULD and WATFORD, Circuit Judges, and SANDS,** District Judge.

Paravue Corporation ("Paravue") appeals from the district court's order

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia, sitting by designation.

affirming the bankruptcy court's grant of summary judgment for Heller Ehrman, LLP ("Heller"). Paravue argues the bankruptcy court erred in finding Paravue's claim for legal malpractice was barred by California's one-year statute of limitations. We agree and reverse.[1]

We have jurisdiction under 28 U.S.C. § 158(d). We review *de novo* a bankruptcy court's grant of summary judgment. *Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1138 (9th Cir. 2016). We view the evidence in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied substantive law. *Id*.

California's continuing representation rule provides that a claim for legal malpractice is tolled so long as "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Cal. Civ. Proc. Code § 340.6(a)(2) (Deering 2010). However, § 340.6 does not expressly state a standard to determine when an attorney's representation of a client regarding a specific subject matter has ended. *Gonzalez v. Kalu*, 43 Cal. Rptr. 3d 866, 870 (Ct. App. 2006). In *Gonzalez*, the California Court of Appeal held that "in the event of an attorney's unilateral withdrawal or abandonment of the

---

[1] Heller's Motion to Strike is **GRANTED**. Accordingly, the submissions are **STRICKEN** from the record in this case. However, Heller's Motion for Sanctions is **DENIED**.

16-15385

client, the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services." *Id*. at 872. "[C]ontinuous representation should be viewed objectively from the client's perspective." *Id*. at 873. However, "[w]hether the client actually and reasonably believed that the attorney would provide further legal services regarding a specific subject matter is predominantly a question of fact for the trier of fact." *Id*. The court further stated that the determination of whether the relationship terminated may be decided as a question of law "if the undisputed facts can support only one conclusion." *Id*. (citing *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1071 (Cal. 1998)).

Using the standard articulated in *Gonzalez*, the bankruptcy court found that an email thread from July 3, 2007 to July 7, 2007 between Dr. Barghout and a Heller attorney had conclusively terminated Heller's representation of Paravue as a matter of law. We believe this case involves a fundamental application of the principles concerning the continuing representation rule in the context of summary judgment. We find that the evidence in the record creates genuine issues of material fact and, therefore, the bankruptcy court erred in granting summary judgment. Viewing the emails in the light most favorable to Paravue, we find the emails do not irrefutably terminate the attorney-client relationship in this case. Genuine issues of material fact exist as to whether Heller's substantive

16-15385

representation of Paravue terminated with the email thread. Further, a reasonable fact-finder could conclude that Heller's representation had not terminated by July 11, 2007.

On May 10, 2007, Acuity sued Paravue and Dr. Barghout. On June 27, 2007, Acuity demanded Paravue assemble its assets for public sale. On July 3, 2007, and through the course of several days and various emails, Dr. Barghout and her personal counsel demanded Heller take action to prevent the sale. An attorney for Heller responded that Heller was unable to and would not act at Dr. Barghout's direction. The attorney further stated to Dr. Barghout that she lacked authority to speak for Paravue and that the attorney expected Heller would seek to withdraw as early as the following week.

On July 10, 2007, Heller notified counsel for Dr. Barghout that Heller was moving to withdraw. Paravue's director and Chief Executive Officer ("CEO") had resigned effective July 9, 2007, leaving Dr. Barghout as the sole remaining director of Paravue. After Dr. Barghout learned of the CEO's resignation, she appointed herself CEO, effective immediately. On July 10, 2007, Heller also emailed Dr. Barghout and her counsel requesting immediate consent to withdraw.

On July 11, 2007, Heller notified Dr. Barghout and her counsel that it would appear before the court for an *ex parte* hearing on its application to withdraw as counsel for Paravue and requested that they provide notice of any opposition. In

response, Dr. Barghout's counsel requested information concerning Heller's fees and stock as a condition of withdrawal.[2] Heller was not willing to provide the information or refund a portion of its fees.

Dr. Barghout alleges that on July 13, 2007, with the advice of Heller,[3] she appointed a director to the Board of Directors and the Board then confirmed her as CEO. The Parties dispute when Dr. Barghout's role as CEO became effective and what authority she had prior to being confirmed by the Board. Heller's application to withdraw as counsel for Paravue was granted on July 17, 2007.

Though not a complete recitation of all the pertinent evidence, the facts noted clearly establish that numerous genuine issues of material fact exist as to whether Heller's relationship with Paravue ended with the email thread, as found by the bankruptcy court. Paravue argues that the bankruptcy court conflated Dr. Barghout with Paravue, the corporation. We agree. It appears the bankruptcy court viewed the facts from the perspective of Heller, *the attorney*, and as though Dr. Barghout was the client, not Paravue. The evidence does not show that Paravue,

---

[2] The basis on which Dr. Barghout withheld consent to withdraw, *i.e.,* the disgorgement of fees, was deemed improper by the bankruptcy court.

[3] We note that this fact was not raised below before either the bankruptcy court or the district court. We also note that Paravue's citation to the record does not support their assertion that Dr. Barghout's confirmation was done with the assistance of Heller. Therefore, we decline to include this assertion in our review. Nonetheless, it does appear that Dr. Barghout officially became CEO on July 13, 2007.

*the client,* "actually and reasonably believed" that Heller would provide no further legal services. *Gonzalez*, 43 Cal. Rptr. 3d at 873.

In *GoTek Energy v. SoCal IP Law Group, LLP*, 208 Cal. Rptr. 3d 428 (Ct. App. 2016), a law firm emailed its client, a corporation, on November 7, stating that it "must withdraw" and "[c]onsequently, the firm's attorney-client relationship with [client] is terminated forthwith, and we no longer represent [it] with regard to any matters." *Id.* at 431. The next day on November 8, the client responded by letter stating that the firm should make all necessary preparations to deliver its files to other counsel and thanked the firm for its services. *Id*. On November 15, the law firm sent a letter confirming that the attorney-client relationship was terminated and that it was transferring all files to designated counsel. *Id*. The client's CEO testified that he believed the relationship terminated on November 15. *Id*. The California Court of Appeal held that the law firm had unilaterally withdrawn without client consent and the firm's representation had ended on November 7, the date of the initial email. *Id*. at 433.

Here, however, the emails were not directed to the CEO or any other officer of Paravue that Heller believed at the time was authorized to act for the corporation.[4]  Heller sent the emails to Dr. Barghout and her personal attorney,

---

[4] California Rules of Professional Conduct ("CRPC") state that a lawyer who represents an organization or entity, including a corporation, is counsel for the organization itself, acting through its highest officer, employee, body or constituent

Russo. Dr. Barghout was then only the Chief Science Officer and one of two directors for Paravue, and there is no evidence that her personal attorney was counsel for Paravue or authorized to act for the corporation. During the course of the email thread from July 3 to July 7, Mr. Hootnick was still CEO of Paravue. At that time, Heller by its own statement believed Dr. Barghout had no authority to instruct the law firm. When asked by Dr. Barghout to take legal action on behalf of Paravue, the Heller attorney refused to do so and asserted Dr. Barghout had no authority to direct Heller on behalf of Paravue. Therefore, the bankruptcy court incorrectly concluded that there was no genuine issue of material fact as to whether these emails provided sufficient notice to Paravue, a corporation, that Heller was terminating the attorney-client relationship.

Rather than simply identify the relevant evidence and determine whether they created a genuine issue of material fact, the bankruptcy court improperly weighed the evidence and implicitly made credibility determinations to conclude that no genuine issue of material fact existed as to the meaning and effect of the emails. Accordingly, the bankruptcy court erred in granting summary judgment on Claim 1019 because there are genuine issues of material fact regarding whether the attorney-client relationship terminated before July 11, 2007, whether the

---

overseeing the particular engagement. CRPC 3-600(A); *La Jolle Cove Motel & Hotel Apts., Inc. v. Superior Court*, 17 Cal. Rptr. 3d 467, 475 (Ct. App. 2004).

relationship continued thereafter and, if so, for how long.

Paravue did not address the lower court's ruling as to Claim 1020 in its opening brief. Accordingly, we conclude that Paravue waived Claim 1020 on appeal. *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1129-30 (9th Cir. 2012) ("Claims not made in an opening brief in a sufficient manner to put the opposing party on notice are deemed waived.") (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002)).

**AFFIRMED in part, REVERSED in part, and REMANDED.**

The parties shall bear their own costs on appeal.