Filed 6/25/15  Certified for Publication 7/21/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHAOXING CITY MAOLONG WUZHONG DOWN PRODUCTS, LTD. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> KEEHN & ASSOCIATES, APC et al., <br><br> Defendants and Respondents. | B256988 <br><br> (Los Angeles County Super. Ct. No. BC455229) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rolf M. Treu.  Affirmed.

Timothy D. McGonigle for Plaintiffs and Appellants.

Petit Kohn Ingrassia & Lutz, Douglas A. Pettit, Valerie G. Hong, and Matthew C. Smith, for Defendants and Respondents.

* * * * * *

1

A creditor retained attorneys to challenge another creditor's lien after the debtor declared bankruptcy. After the first creditor's attorneys missed the deadline to investigate and attack the lien, that creditor hired new counsel and entered into a settlement with the debtor for less than the full amount of its debt. The creditor sued the first attorneys for malpractice, and filed suit less than one year after the settlement but more than one year after the missed deadline. The trial court granted summary judgment to the attorneys, concluding that the lawsuit was untimely as a matter of law. We conclude this was correct, and affirm.

## FACTS AND PROCEDURAL HISTORY

An arbitrator determined that plaintiffs Shaoxing City Maolong Wuzhong Down Products, Ltd. (Shaoxing) and Shui Yan Cheng's (Cheng) (collectively, plaintiffs) were entitled to a total of $5.35 million from Aeolus Down, Inc. (Aeolus), Wei Xu, and Wei Dong (collectively, debtors). After the arbitrator issued its tentative ruling but before plaintiffs obtained a judgment confirming the arbitration award, Aeolus entered into a security agreement with Zhejiang Hengdi Bedding Co., Ltd. And Zhejiang Liuqiao Feather Co., Ltd. (collectively, Zhejiang), and Zhejiang filed a blanket lien attaching to all of Aeolus's assets.

Soon after plaintiffs obtained the judgment, debtors filed for bankruptcy. Plaintiffs hired defendants Keehn & Associates and L. Scott Keehn (collectively, Keehn) as counsel in order to obtain discovery and challenge Zhejiang's lien as a fraudulent transfer. Pursuant to a stipulation of the parties, the bankruptcy court ordered that all discovery and any challenges pertaining to Zhejiang's lien be filed by an "Investigation Termination Date" of October 7, 2009. The deadline came and went without Keehn completing its discovery or filing any challenge to Zhejiang's lien. On November 10, 2009, the bankruptcy court denied Keehn's post-deadline request to retroactively extend the deadline.

Within weeks, plaintiffs retained Landsberg and Associates and Ian Landsberg (collectively, Landsberg) and formally substituted Landsberg for Keehn as their

bankruptcy counsel.  With Landsberg as counsel of record, plaintiffs engaged in mediation with debtors and, on February 22, 2010, ultimately agreed to accept $3.75 million—$1.6 million less than the arbitration award.

On February 18, 2011, plaintiffs sued Keehn and Landsberg for malpractice.  Each set of defendants moved for summary judgment, and the trial court granted those motions.[1]  With respect to Keehn, the trial court held that plaintiffs' lawsuit was untimely as a matter of law because it was filed more than one year after the bankruptcy court ruled that plaintiffs lost their right to challenge the Zhejiang lien.  The court also rejected plaintiffs' argument that the limitations period was tolled due to Keehn's continued representation of them after substituting out as counsel.

Plaintiffs timely appeal.

## DISCUSSION

We independently review whether the trial court properly granted summary judgment due to the absence of any triable issue of material fact.  (Code Civ. Proc., § 437c.)[2]  In doing so, we liberally construe the evidence in support of the party opposing the motion, and resolve doubts against summary judgment and in favor of trial.  (*Ibid.*; *Mt. Hawley Insurance Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1393-1394.)

A claim for legal malpractice is timely only if filed "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission," and in no event more than "four years from the date of the wrongful act or omission."  (§ 340.6, subd. (a).)  This period is tolled if, among other reasons, (1) "[t]he plaintiff has not sustained actual injury" (§ 340.6, subd. (a)(1)), or (2) "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred"

---

[1]    Plaintiffs separately appealed the order granting summary judgment for Landsberg.  See B257823.

[2]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

(§ 340.6, subd. (a)(2)).  (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 742-743 (*Jordache*).)

Plaintiffs do not dispute that they discovered Keehn's negligence more than one year before filing this action.  Instead, they assert that there are triable issues of fact as to whether the statutory period was tolled under each of the two bases for tolling cited above.

## I.    Actual Injury

Plaintiffs argue that the trial court erred in granting summary judgment because they were not actually injured until the mediation concluded with an award that was $1.6 million less than they were owed (such that their lawsuit was timely filed within one year of that date).  Keehn responds that plaintiffs were actually injured either (1) when they lost their right to challenge Zhejiang's lien, or (2) when plaintiffs starting paying Landsberg fees to try to repair the damage caused by Keehn's alleged malpractice (see *Budd v. Nixen* (1971) 6 Cal.3d 195, 201 [malpractice plaintiff injured when he pays attorneys fees to new counsel], superseded on other grounds by § 340.6; *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 115 ["Plaintiffs first sustained actual injury when they obtained and were obligated to pay new counsel to file a lawsuit seeking to escape the consequences of [the earlier, alleged malpractice]."]).  Because Keehn adduced no evidence as to when plaintiffs incurred attorneys fees for Landsberg's work, the propriety of the trial court's summary judgment ruling turns on whether plaintiffs were actually injured when they lost their right to challenge Zhejiang's lien or instead when they settled for less than the full amount of their debt.

For purposes of section 340.6, "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." (*Jordache*, *supra*, 18 Cal.4th at p. 743.)  What matters is "discovery of the *fact* of damage, not the amount." (*Laird v. Blacker* (1992) 2 Cal.4th 606, 612 (*Laird*); *Jordache*, at p. 752 ["once the plaintiff suffers actual harm . . . uncertainty as to the[] amount of damages" does not toll limitations period].)  As long as

4

that amount is more than nominal (*Jordache*, at p. 752; *Adams v. Paul* (1995) 11 Cal.4th 583, 589 (lead opn. of Arabian, J.)), actual injury exists even if the client has yet to "sustain[] all, or even the greater part, of the damages occasioned by his attorney's negligence" (*Budd*, *supra*, 6 Cal.3d at p. 201); even if the client will encounter "difficulty in proving damages" (*Jordache*, at p. 752); and even if that damage might be mitigated or entirely eliminated in the future (*Laird*, at p. 614 [possibility of relief on appeal does not eliminate "actual injury"]; *Jordache*, at p. 754 ["an existing injury is not contingent or speculative simply because future events may affect its permanency . . ."]; *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227 [same] (*Foxborough*); cf. *Laird*, at p. 616 [confirming that injury need not be "'irremediable'" to be "actual"]).

However, "actual injury" does not include "speculative and contingent injuries . . . that do not yet exist . . . ." (*Jordache*, *supra*, 18 Cal.4th at p. 754; *Adams*, *supra*, 11 Cal.4th at p. 590 (lead opn. of Arabian, J.) [actual injury does not exist where "the attorney's negligence may have created only the potential for future harm"]; see *International Engine Parts v. Fedderson & Co.* (1995) 9 Cal.4th 606, 612 [tax examiner's proposed findings regarding tax deficiency are too speculative to constitute "actual injury" arising from accountant malpractice because findings were only proposed and were issued "prior to any determination of tax deficiency"].)

We are consequently tasked with "distinguish[ing] between an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." (*Jordache*, *supra*, 18 Cal.4th at p. 754.)

The undisputed facts point to the conclusion that the plaintiffs were actually injured no later than November 10, 2009, for two reasons. First, that was the date upon which the bankruptcy court definitively confirmed that plaintiffs lost their right to challenge the Zhejiang lien. "The loss or diminution of a right or remedy constitutes injury or damage." (*Jordache*, *supra*, 18 Cal.4th at p. 744; accord, *Adams*, *supra*, 11 Cal.4th at pp. 591-592 (lead opn. of Arabian, J.).) Any uncertainty as to whether the

5

Investigation Termination Date might be waived or extended (cf. *Adams*, at p. 598 (conc. opn. of Kennard, J.) was dispelled when the debtor opposed plaintiffs' motion to extend the deadline and the bankruptcy court denied that motion and thereby cut off plaintiffs' right to challenge the Zhejiang lien.

Second, and relatedly, the absence of a pending challenge to the Zhejiang lien substantially weakened plaintiffs' negotiating position in the ensuing mediation, and the "los[s]" of "considerable settlement value" also constitutes "actual injury." (*Laird*, *supra*, 2 Cal.4th at p. 615; accord, *Jordache*, *supra*, 18 Cal.4th at pp. 743-744.) A litigant who seeks to enforce a lien in bankruptcy court suffers actual injury when its negotiating position is weakened by a bankruptcy trustee's comment that the lien may not be enforceable. (*Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 41-42 (*Village Nurseries*).) A litigant—like plaintiffs here—who seeks to challenge a lien in bankruptcy court faces just as much, if not more, of a weakened negotiating position when a bankruptcy judge definitively rules that any challenge to that lien is procedurally barred.

Plaintiffs raise three further arguments. They contend that the question of actual injury "raises an issue of fact" (*Budd*, *supra*, 6 Cal.3d at p. 198), and questions of fact are ill suited for resolution on summary judgment. But where, as here, the "material facts are undisputed, the trial court can resolve the matter [of actual injury] as a question of law in conformity with summary judgment principles." (*Jordache*, *supra*, 18 Cal.4th at p. 751; *Village Nurseries*, *supra*, 101 Cal.App.4th at p. 40.) Plaintiffs also point us to *Tchorbadjian v. Western Home Ins. Co.* (1995) 39 Cal.App.4th 1211, 1219 for the proposition that "[t]he actual injury occurs in litigation malpractice when the malpractice results in an adverse judgment or settlement in the underlying action." But *Tchorbadjian* did not involve the loss of a right or remedy preceding a judgment or settlement; in such cases, and consonant with the authority cited above, "[t]here is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury." (*Jordache*, at p. 752.) At oral argument, plaintiffs argued that

6

they did not subjectively believe that they had suffered actual injury because Landsberg assured them that they could attack the lien notwithstanding the bankruptcy court's definitive ruling to the contrary. But subjective belief is irrelevant to the question of whether actual injury has been sustained. (*Britton v. Girardi* (2015) 235 Cal.App.4th 721, 733 [in assessing actual injury, "the fact of injury or damage need not be recognized or noticed by the plaintiff."].)

The trial court correctly decided that plaintiff's malpractice claim was not tolled until the completion of the mediation.

## II.     Continued Representation By Keehn

Plaintiffs alternatively argue that their malpractice claim was tolled—and ostensibly remains tolled today—because one of Keehn's employees told someone working for Landsberg's co-counsel that Keehn "would definitely continue to oversee the transition of the case to Mr. Landsberg, and assist the new attorney (meaning Landsberg) with his work on the case."

A plaintiff who is aware of, and has been actually injured by, attorney malpractice in a matter need not file suit for malpractice while that attorney is still representing him on the same "specific subject matter." (§ 340.6, subd. (a)(2); *Truong*, *supra*, 181 Cal.App.4th at p. 116; cf. *Foxborough*, *supra*, 26 Cal.App.4th at pp. 228-229 [no tolling where "an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff"].) In deciding whether an attorney continues to represent a client, we do not focus "on the client's subjective beliefs"; instead, we objectively examine "'evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship.'" (*Truong*, *supra*, 181 Cal.App.4th at p. 116, quoting *Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1498; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 887.)

Where an attorney unilaterally withdraws or abandons his client, "the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide legal services." (*Gonzalez v. Kalu* (2006) 140 Cal.App.4th

21, 30 (*Gonzalez*).) But where, as here, the attorney has been formally substituted out as counsel, that act of substitution ordinarily ends the relationship (*id.* at p. 28; accord, *Laclette v. Galindo* (2010) 184 Cal.App.4th 919, 927; *Gurkewitz v. Haberman* (1982) 137 Cal.App.3d 328, 332-333 (*Gurkewitz*)), although the relationship can continue—notwithstanding the withdrawal and substitution—if the objective evidence shows that the attorney continues to provide legal advice or services (*Nielsen v. Beck* (2007) 157 Cal.App.4th 1041, 1052 (*Nielsen*)).

In this case, the undisputed evidence establishes that plaintiffs' relationship with Keehn ended when Landsberg substituted in as counsel. The sole evidence of a continuing relationship after that point in time is the statement of a Keehn employee that Keehn would "oversee the transition" and "assist" Landsberg "with his work on the case." Whether or not this statement is hearsay when recounted under oath by plaintiff Cheng (who heard the statement from co-counsel's employee), it was also recounted under oath by co-counsel's employee herself and is not hearsay when presented through her.

However, this statement alone does not establish a continuing attorney-client relationship. Assisting the transition from one attorney to another is not providing assistance on the same subject matter. (*Foxborough*, *supra*, 26 Cal.App.4th at pp. 228-229; *Gurkewitz*, *supra*, 137 Cal.App.3d at p. 334.) And the undisputed evidence—as well as counsel's concession at oral argument—establishes that Keehn provided no legal services or representation after Keehn was substituted out as counsel. It is undisputed that Keehn provided no advice to plaintiffs or to Landsberg; they performed no work for them; they sent no bills for legal services relating to ongoing representation; they never appeared for plaintiffs and never negotiated on plaintiffs' behalf; they never even spoke or communicated with Landsberg or plaintiffs regarding the pending bankruptcy case. Such acts are required for there to be a continuing attorney-client relationship. (See *Gurkewitz*, at p. 334 [negotiating on behalf of client]; *Nielsen*, *supra*, 157 Cal.App.4th at

8

p. 1052 [providing legal advice to client on same matter]; *O'Neill v. Tichy* (1993) 19 Cal.App.4th 114, 121 [billing client for work on same matter].)

Because "there was no evidence that the attorney had taken any steps on behalf of the client" (*Truong*, *supra*, 181 Cal.App.4th at p. 117), the isolated statement of one of Keehn's attorneys following Keehn's withdrawal and substitution is insufficient as a matter of law to constitute continued representation.

In sum, the one-year statute of limitations began to run on November 10, 2009, and had expired by the time plaintiffs filed their lawsuit in February 2011.

## DISPOSITION

The judgment in favor of Keehn is affirmed. Keehn is entitled to costs on appeal.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ

Filed 7/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHAOXING CITY MAOLONG WUZHONG DOWN PRODUCTS, LTD. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> KEEHN & ASSOCIATES APC et al., <br><br> Defendants and Respondents. | B256988 <br><br> (Los Angeles County <br> Super. Ct. No. BC455229) <br><br> **ORDER CERTIFYING OPINION** <br> **FOR PUBLICATION** |

THE COURT:*

     The opinion in the above-entitled matter filed on June 25, 2015, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\*     BOREN, P. J.          HOFFSTADT, J.